Our first case this afternoon is Newton versus Pennsylvania State Police number 22-2669. And we'll hear from counsel. Thank you, Your Honor. May it please the court. My name is Nicole Boland and I represent the appellant, the Pennsylvania State Police. I'd like to reserve three minutes of rebuttal time. That'll be granted. Thank you, Your Honor. Your Honor, successful performance of a limited duty job does not make that individual a qualified individual under the law when that is not the job that they were hired for. In this case, the job at issue is that of a Pennsylvania State Police trooper. A Pennsylvania State Police trooper is a first responder. In this case, Trooper Newton was hired as a State Trooper and he received the first responder benefits that are specific to State Police troopers under the CBA. Now, for State Police, in the jury instructions, the court did describe the position as trooper who is assigned to the position of procurement and supplies officer. So, and I believe that was your requested description. So it did, in fact, include trooper as a qualified or as, as part of the title. So that was at your request. We requested from the beginning of the trial that the job be described as a full duty Pennsylvania State Police trooper. And we requested that a specific question be inserted on the verdict slip for the termination claim to determine whether or not he was qualified. And that request was not granted. As to the instructions, we did request a similar instruction. I've cited the portions in the joint appendix. And ultimately the instructions that were given to the jury did not fully apprise the jury of the question that was before it. And it didn't properly frame the job at issue. But was there any prejudice to you? Because I did see the explanation for element two, mostly talked about a corporal and the corporals qualification as a corporal assigned to procurement and specialist officer. And from what I understood, you were asking for that to say corporal and trooper or corporal or trooper assigned to that. But in the end, PSP was able, number one, to actually have the element described as a trooper and was able to close and make those arguments. So is there any prejudice to PSP given that the description was as requested and that PSP was able to make those arguments? I would disagree, Your Honor, that the question was as requested. We didn't request that it be submitted to the jury in the manner in which it was submitted to the jury. The question about a qualified individual and whether he could do the job of a corporal was inserted on part one of the form, which was for the failure to promote claim. And that claim had all of its own different theories and claims. There was evidence presented to the jury that Mr. Newton could have been promoted in place to corporal. So there were just different considerations that went into that promotion piece that just do not apply to the termination piece. So that question about the corporal was very specific because he was seeking the job of a corporal in place. We did want a separate question for the termination claim reminiscent of the one that was provided on the first half of the jury slip. And you asked for that at the charging conference because I saw your proposed jury instructions seem to have a different theory. Ultimately, that's how it came together at the charge conference. So no time prior to the charging conference, did PSP ask for that? I didn't see it, but was there a point prior to that? Prior to that, yes, we took the position from the beginning of the trial that the consideration should be whether he can do the job of a full duty trooper, not whether or not this is about the procurement and supply position. If you look all the way back to the opening statements, we were trying to make that argument and the court didn't agree as we went along that it should be framed that way. And then ultimately the last salvo was our jury instructions when we requested a specific instruction and then that separate verdict slip question that we ultimately didn't receive. So the case was sent in a confusing manner to the jury. The jury did struggle. They had multiple questions. In fact, one of the questions they had was whether or not they had to find intentional discrimination or whether they can decide as is. So the record does reflect that the jury did struggle and the two verdicts are incongruent. The reasoning was the same. The CBA controlled the promotion piece, just like it controlled the termination piece. So we did preserve those issues, your honor, from the beginning of the trial, all the way through the charge conference, then through the rule 50 D motion for reconsideration, we reiterated these arguments. And, um, most importantly, trooper Newton could not be a first responder. And 17 years ago, when he suffered his disability, the law would have allowed us to separate him at that point because he couldn't be a first responder any longer. He couldn't affect an analysis though. What could have happened? Yes, your honor. Uh, the case law is clear specifically with respect to law enforcement jobs. It's the ability to be able to act. That is truly the concern. We all hope that there's not an emergency. No, no. I mean, I understand you could have done something years ago, 17 years ago, but, but, but today, I mean, you didn't do anything. So does that really matter for purposes of our, of our analysis today? I think it matters for purposes of determining discrimination because oppositely of discriminating against mr. Newton, when he suffered his disability 17 years ago, we did the opposite. We went to the bargaining table with the union and gave this extraordinary benefit. We did our duty to these troopers that decided to invest their lives in our agency. Does that entitle to you to judgment as a matter of law? It doesn't seem that would make it unreasonable for a rehab act requirements under the rehabilitation act are, isn't the issue before us, whether or not you were entitled to judgment as a matter of law. That's correct. Your honor, the court denied a rule 50, a motion. And then subsequently our rule 50 B motion. And on a number of bases, you know, the first of which was whether or not he's a qualified individual. It's our position that he's not a qualified individual merely because he can perform the light duty job. Also on the unreasonable accommodation prong of the analysis, we feel as though that too, was an error because there, there are many reasons why this is unreasonable requiring the state police to go above and beyond. You know, I mean, in a lot of what you're saying, I think there's some sort of just inherent equitable notion of how could an entity discriminate against someone based on a disability when they kept the person fully on staff for an extra 17 years post disability and the deadline that they picked for the termination was a 25 year point that was in the CBA. So there's a certain amount of just kind of common sense grounding to that is now we're giving the deadline, but we're in this kind of area where we have to look at the text of the CBA because we look at it for the 25 year point, right? That that's what prompted it. But we also have to look at the text of the CBA when it says you're not guaranteed entitlement of continued limited duty after 25 years. Now, and those words really cut, at least as I see it, they make your position much harder because if they would have said cannot continue in a limited duty position after 25 years, then you've got a really nice case, I think, in terms of judgment is a matter of law. But, you know, I mean, there's no point second guessing the CBA, you're stuck with it, but it says not guaranteed entitlement. And so all that means is he can't, he may not be able to continue that way. But then if the reason he lost the entitlement is in fact his disability, all of a sudden you begin to make out a disability discrimination claim. So it strikes me that the hardest part for your case on liability is that it doesn't say cannot continue if it did, you're in great shape, but it says not guaranteed. What do you think? Your Honor, I think that would be a great argument in connection with an unfair labor practice charge. But, you know, in this instance, we're looking under the discrimination acts. So although that technical contractual argument is compelling, it's better placed in an unfair labor practice paradigm. And above and beyond that, we enforce that term, that term, excuse me, mandatorily. It was automatically applied. There were no exceptions. No one had ever contested it before. Under Pennsylvania law, contractual practice actually becomes an enforceable contractual term. So in this instance, under Pennsylvania law, our absolute policy and mandatorily requiring that troopers who are on limited duty separate at 25 years became a contractual term. Nobody had ever contested it, and we had no reason to believe that it would be viewed as discriminatory, particularly when the term was fashioned at the bargaining table by, and ultimately ended up in a neutrally drafted CBA. This was a bargain for deal, and that was But the bargain for nature of the deal seems to cut against you because, you know, you negotiate a million things at a CBA. But if you were to negotiate a little more for this, and Jess said, on this one, we want to say, cannot continue in a limited duty after 25 years. Great. It now seems like you negotiated something that said you're not entitled to it. And now you're saying, oh, we only negotiated for so much. But now due to our policy and practice, we want our negotiation of only this much to actually be read to be a lot more. That's what it sounds to me like you want. I see your point, Your Honor. And I think in an ideal world, the contractual term that is enforceable, our policy and practice of mandatorily applying that term would ideally be in the contract. But under Pennsylvania law, although it's not in the contract, it still is an enforceable term, term of employment, not term of employment. Right. And again, Your Honor, we're here in a discrimination context. Even if the Pennsylvania State Police mistakenly relied on what they believe to be a mandatory term, that can amount to intentional discrimination. Indeed, intent under the law has to be some sort of deliberate action. It can't just be negligence or bureaucratic inaction. Here, we didn't even decide to do this on our own. We this term came into existence with the union who represented Mr. Newton. So again, just zooming out reliance on the CBA, even if there is some wiggle room, there can't constitute discrimination under the legal definition of intent. And can I ask you to because we don't have a whole lot of time, but I'm interested in the offsetting front pay with pension benefits. Could you deal with your argument on that? Absolutely. I guess maybe I can start with a question. Do you concede that that Newton's pension benefits are a collateral benefit? They're from the same employer. So that's hard to articulate. And there's no case law really opining or giving us advice on cases that seem to say that pension benefits are a collateral benefit. So in those cases, it appears to be that the pension is from a different employer. We're talking about two different employers. This is a very unusual situation where there's a front pay while the person's collecting a full pension from the state police. And, you know, in this instance, the court who goes into a pension, don't non-state entities thrown to Newton's pension as well. That's a good question, Your Honor. The record doesn't reflect that point one way or the other. I'd be happy to provide you guys a windfall that if you if you're successful. Perhaps, Your Honor, but the record doesn't necessarily support that conclusion. I'm happy to supplement the record on that point. Can I ask you in the the circuit split seems to me to be that one line of cases says it can never be offset and the other line says it's up to a district court's discretion. And here it seems that is what the district court did. It didn't conclude that it was never allowed to offset. It concluded it had the discretion and it exercised that discretion. This is an abuse of discretion, Your Honor, because of the impermissible factors that the trial court considered as an initial matter. Reinstatement was the proper remedy here. It was available and the court erroneously applied the standard for reinstatement. But even putting that aside as to the front pay award, the court used the front pay award in a punitive fashion. In the case of the Gullett-Ginn case and other cases say that a reason for this type of thing would be to deter people from discriminating. And our cases say the same, don't they? Our Third Circuit precedent indicates that the front pay is to make an individual whole. And actually, we have authority from the United States Supreme Court in the Barnes case that indicates they can't be our position is that it's just simply to make the individual whole. And that's what the law reflects. And in this instance, the court was clear that it was seeking to serve a deterrence function. And in doing so, it took into consideration the promotion claim that we want, we prevailed on. And so that was held against us as well as other evidence. Well, along the lines of what Judge Chung just asked, when we write this, I would do what's your position on a pension benefit and offset? Should that be in the court's discretion? Or is there a bright line? I take it you're not going to take this position, but that it should never be offset. The court should absolutely have the discretion to offset the pension, Your Honor. And actually, I guess maybe a better way to put my question is, does a court have to have discretion to offset a pension? I would, I would agree. Yes, Your Honor, the case law indicates that we're in a court of equity, and the court can take into consideration a lot of things, you know, that maybe it won't be able to consider in the court of law. So I think, yes, but because, because front pay is an equitable remedy. And because the pension is, in essence, a double recovery, no one normally gets paid both their salary and a pension by the same employer. It's really unusual. It would seem that the front pay being grounded in equity, this isn't a tort claim, where we're trying to make a person whole under a law with a collateral source rule that's grounded in tort law. Instead, this is an equitable play. Do you believe it would be an abuse of discretion for a court in exercising its I do believe that would be an abuse of discretion, Your Honor. Now, maybe if it was a different thing, where both types of recovery were mandated under law, but not under the cloak in the guise of equity, we would just have to say, every now and then someone wins, there's just a windfall. But here, front pay, the Supreme Court's made abundantly clear is an equitable relief. And so how so your point, maybe this question for your friend might ask you this. Get ready. Yes, Your Honor, I completely agree. I think it would be inequitable for such a tremendous windfall. So, Your Honors, I see my time has elapsed. I will just close and say that we went above and beyond for Mr. Newton, he could not be a first responder, we made sure he vested in in the full pension benefits at 25 year, we did our duty to him as agreed. Thank you, Your Honor. Thank you, counsel. And we'll hear from your adversary. Good afternoon, may it please the court. Nikki Belisarius Lycos on behalf of Robert Newton appellee. At issue here is whether before you get too far into it, compensatory damages is no longer an issue. And we can see that pursuant to the Supreme Court decision, those are no longer available under the Rehab Act. I want to point out to you and to everybody here and anybody who might be listening to this. Council here found a case that that apparently district court hadn't found nor anybody else. And we had the candor to contact the court to basically let us know she lost. That is tremendous candor. That's just the kind of thing attorneys ought to be doing. So we're grateful for your candor, you did the right thing. Just to be clear, the judgment came or excuse me, that decision came down from the Supreme Court after true judgment. Okay, so the but you really, that is, that's what lawyers ought to be doing. And we thank you for, for, for taking that position and letting us know. So that was great. Could we set it back to Patrick, we put this back to 15. Thank you. Thanks. And thank you. Thank you, Your Honor. At the heart of this case is the question of whether trooper Newton was a qualified individual able to perform the essential functions of his job. So the question is, what was true for Newton's job? His job was a procurement and supply officer with the Pennsylvania State Police, but you agreed that the with the state's request that it be submitted to the jury as trooper assigned to position of absolutely, I believe that the jury instruction was proper, it identified the proper instruction. And it properly put the issue in the jury's hands, because it is a question of fact, whether or not somebody is a qualified individual that goes to the jury. The state police are arguing that he he wasn't qualified for this position of full duty trooper, which isn't a position it doesn't exist. Trooper is a rank, they have testified clearly it's uncontested trooper as a rank and every trooper within the Commonwealth is assigned to a specific job. Some of them are patrol troopers, some are in specialized position is a distinct, it is a rank, but it is distinct. It's not a civilian position. The title carries duties with it. Well, trooper Newton was the procurement supply officer. So let me tell you a little bit about what a procurement supply officer is. First of all, it's a position that existed before trooper Newton applied and was hired for it. It's not a light duty position with other troopers also assigned to it. 16 of them across the state, one in each troop, right. And the evidence was that the his position description was that Newton was to perform other related duties and those duties of a law enforcement officer as required in as much as they do not conflict with the limitations set forth by the state police medical officer. Isn't that last clause a reasonable accommodation from a requirement of all the other 15 procurement and supply officers? Well, there was no evidence at trial that there was ever a circumstance in the 17 years that I'm not asking you that question. Answer my question. My question is, wasn't that requirement made of all the full-time troopers without the in as much clause, isn't the in as much clause of reasonable accommodation? So I can't honestly answer that question because we never saw a job description for another trooper or another procurement and supply officer. So I agree with this court that yes, if in fact other procurement and supply officers had to go out and engage in law enforcement physical duties, then yes, an accommodation was provided to troopers. They actually had to execute those duties if those duties were a part of their job description. But how we determine if something's an essential function, there's a test and there's factors that we look at to see if a duty is an essential function. So when we look at the position of procurement supply officer, the test from the court in Turner versus Hershey. Trooper assigned to the position of procurement. Right. Yes. A trooper. So one way I'm thinking about this might be like in it's a loose metaphor, but it might be in the army. If you're an officer or enlisted, as opposed to being civilian, you have to run like a mile and a half and 18 minutes. Right. And so that comes with being an officer or enlisted. You have to meet that physical requirement to be in the army, something along those lines. Now you may have a job that sometimes the army staffs with a civilian. Sometimes they staff it with an officer. They can fill those positions on their org chart kind of however they want many times. But at bottom, if you're an officer or enlisted, you have to run around the track one or two times a year and get clocked in it where the civilian doesn't. It strikes me that some of your answer is when we look at the essential job functions would basically say it would be a huge problem if title seven and everything has reached this sort of stuff to terminate a person in the army who had a job that was sometimes filled by a civilian if they couldn't make their time around the track because that isn't essential to what they do. And so why why isn't that an appropriate lens to look through and say when you get the trooper designation we also expect certain just rudimentary law enforcement things to come with that even if you are a PSO. It might be nice to have an armed trooper as a PSO at the barracks just to help keep it safe even if they're just doing PSO things. So why why isn't trooper really really important and why shouldn't we look at both the qualifications for trooper and the qualifications for PSO when we look at this question? Even if you look at the qualifications for trooper and you assume that there's a need to use physical force or effectuate an arrest, I think it's a reasonable accommodation in this circumstance given the position held by my client that the state police did not suffer any undue harm or undue burden by accommodating him and but then that kind of begs into, and I don't know there's much case law on this, kind of a temporal quality to reasonable accommodation. And so if if what they would have originally said is this is a reasonable accommodation and we're going to let you hold the PSO position for 17 years. I think if your client had that option back then to say gee is it a reasonable accommodation to let me be a trooper paid as a trooper doing non-trooper work just PSO work for 17 years might say yeah that sounds like a really reasonable accommodation. You're letting me do something for an extra 17 years when maybe I could be terminated right now. And so we don't have a lot of case law on kind of the we look reasonable as terms of like just day of job of day to day. We don't look at it in terms of temporal but at least if we did wasn't 17 years of letting a trooper have a desk job who couldn't perform full trooper functions reasonable? I disagree that he had a desk job and also there's a notion that there are non-troopers or civilians in this job. Any evidence of civilianization was excluded by the court and Trooper Newton could not have been moved out of his job but for attrition. So there was evidence of trial that there's another trooper who holds the position of procurement supply who's been there for more than 25 years and the only reason he's still there and my client isn't is because my client has a disability. There was no evidence that that individual ever did any of those trooper functions like using physical force or chasing down a suspect. But we get to we get to my metaphor with with the army of the army just sometimes requires people to run a mile and a half in 18 minutes and and that's an essential part of being a non-civilian officer or employee in the army. But could you go so so not to push back there but I really want to know your answer to the temporal question. Why wasn't it reasonable to give him the PSO job with the trooper designation for 17 years? Why wasn't that the reasonable accommodation? I don't think that the law puts an expiration on your hypothetical that the army makes people run a mile a day just because. If you look at the standards the factors to consider for whether something is an essential duty there are factors like is that the reason the position exists? Does this position exist for the person to run a mile and half a month or a day or whatever it is or does it exist for a different purpose? Is the function highly specialized? Here the state police stipulated that the PNS officer is a specialized position. The amount of time spent performing the function. Here we have 17 years where there was never a need for him to perform any physical duty consequence of not requiring it. There's no evidence that there was any negative consequence because Trooper Newton couldn't perform physical arrests and work experience of those in same and similar jobs. Again we have no evidence that anyone else who held the position of PNS officer had to do any of those trooper duties. I want to go back to my opposing counsel said that they could have hired they could have terminated Trooper Newton 17 years ago. I disagree with that. The law requires you to look at the circumstances and to provide an accommodation and if there's a position you're not creating a new position. No one's asking you to do that. You have 16 procurement supply officers across the commonwealth. That position opened up. My client applied for it and he was selected for it. It's a position that existed that he could perform within the confines of his limitations. So they couldn't have fired him 17 years ago. Does it matter? I asked your adversary. Does it matter? I mean what they didn't do 17 years ago? No but it's just remarkable to me that the position would be that we could have fired him because that would have been a violation of the law at that time. Well there is law that there's no requirement to make a temporary limited duty position permanent. So if at some point that they opted not to hire him for permanent that would not be contrary to the Rehabilitation Act. But the PNS officer's not was not a temporary position and frankly 17 years ago I don't believe any civilians were in that position. So a PNS officer is not a temporary position. It's a position that they have that they open up and that they allow. It's a specialized position. But since it was a trooper position and he initially filled it as a temporary light duty there's no requirement under the law to make it a permanent light duty position. I don't think this matters. Right that's fine. I want to say one other thing about this notion that it's their policy to interpret the CBA the way they do. First of all the CBA gives discretion. It gives 100 percent discretion to the state police to do what they want and they have made a deliberate choice to take language that is completely discretionary and to make a policy that anyone who's disabled has to leave after 25 years. They have argued throughout this case that it's okay that they do that because they have treated all disabled people the same. If they stood here and said all female officers have to retire after 25 years but it's okay because we make all of the women leave at 25 years. We treat all of the women the same. That does not make it okay. That's not a defense to discrimination to say it's okay because we treat all disabled people the same way. That's actually an admission that you are violating the law consistently and intentionally by making a deliberate choice to interpret the collective bargaining agreement as if it requires you to terminate someone. When it doesn't it gives you choice. The collective bargaining agreement language does not at all indicate that they would have to make somebody leave after 25 years. It's wholly discretionary. Was there any evidence in the record that this CBA provision was a part of their thinking in terminating him? In other words, did they proffer it as that we have to fire you? The initial proffer was that yes, we have to but their HR person acknowledged in her testimony both a deposition and a trial that they don't have to. It's discretionary and that's what they choose to do. With respect to the court's decision with reinstatement and with the front pay component, I just want to comment on that briefly. Yes, reinstatement is the preferred remedy but the there's a question about whether the position exists. The state police argued throughout the life of the case it had been civilianized and didn't exist. When faced with the front pay award, changed their tune and said the position is open and available, we can bring him back. There was a question of the disingenuousness of those two arguments and whether or not the position even existed. The other component of that is the continuing disharmony between the parties. My client and his spouse both testified about his psychological harm. There was judicial notice taken that there's a pending state court action involving a harassment and retaliation claim that my client has against the state police. There was significant evidence of the continuing disharmony to warrant the decision that the district court made. I was just going to ask you to address your colleague's argument as to abuse of discretion and factors that should not have been considered such as using it as a punitive means or the promotion, reliance on the promotion, which I guess was an acquittal in determining the front pay damages and whether or not to offset. That goes to the issue of whether or not to offset the pension benefits. Right, I'm asking you to address. Sure, so with respect to the pension benefits, it is clear case law that those are a collateral source. I disagree that the retirement pension plan is one in the same as the state police. The retirement plan is CSRS, the State Employees Retirement System. So it is not the state police's own private retirement account. And so there's significant case law that talks about the fact that even if the employer contributes to the fund, it is still a collateral source. As far as any abuse of discretion, I think that when we look at this issue of back pay or front paying an offset of a pension, the question is, will it make the person whole? And then the court also considers whether or not offsetting that pension will actually be a windfall for the employer. So does it encourage discrimination because they essentially get away with not paying the front pay damages because of this pension that exists? And I think that's what the court considered here. And that's what she used in exercising that discretion. So let me just tease in what I think I understand about the collateral source rule. It's ancient. It's kind of an old thing. It emanates at least from what I understand tort law. And it kicks in when someone, when a tort plaintiff might recover and be made whole from the defendant, but they also got proceeds from a collateral source, usually an insurer. And so you sit there and say, you know what, we'll let you get both. And that's shouldn't, but that's not on the table right now. The collateral source rule says that, but all of that is when tort law is a matter of law, not a matter of equity. And the collateral source rule is an application in the field of law. Front pay, however, is grounded, fundamentally grounded in equity. There's nothing, at least I can tell in, in these statutes that contemplate front pay is anything at a minimum other than equity. So it seems to me that the collateral source rule originates as a legal doctrine talking about the burdens on the defendants. But when you want to talk equity, our focus is not on the burdens on defendants and other parties, but it's on the equities of the plaintiff. And so that makes this case really, really different. And so what we allow someone to receive both their full-time pay, their front pay and a pension at the same time. And if the goal is to make a person whole, that's kind of whole plus half, right? Well, you can answer. I understand what you're saying. It appears as if it's a windfall, but I think that if you look at the district court's analysis, she explains that it is, you have to balance in a sense, I'm using my own words, not hers, but you have to balance in a sense, this notion of what you would consider a potential windfall to the plaintiff with what you would consider. But that was applying collateral source as a legal doctrine, not recognizing its application in employment discrimination case to a front pay award that's grounded in equity. And so I guess I'm wondering, is there any source of authority that would say this tort law doctrine should be applied as a tort law doctrine in an equitable scenario where we're supposed to look at just the equities associated with the plaintiff? Well, there are other circuits, the fourth circuit and the eighth circuit in particular that have decided that, excuse me, that a pension benefit is a collateral source and not an offset to front pay in the context of an employment discrimination case. Those would be the only cases. That's the cases that are cited, Doyne versus Union Electric, EEOC versus Consul Energy, EEOC versus Grady. Those are the cases that say that. That's the only case law I'm aware of. Well, how about our cases, Craig, McDowell and Maxfield? I believe those are with respect to back pay awards. Okay. So yes, absolutely. Which are legal forms of redress, not equitable forms of redress. Right. So the third circuit has clearly said it's not an offset for back pay. There's not a third circuit decision with respect to that. I understand there were back pay cases, but should their analysis apply in a front pay situation? I believe so. I think that the collateral source is the same. I think the way that the lower court here analyzed it is correct. And it's a discretionary thing for the lower court to decide. So as Judge Chung rightfully pointed out, there's a circuit split. Some saying you must and some saying you have discretion, which should it be? I think that some say you must not offset. Like you should not offset. Okay. And then some say you have discretion. Sorry. Well, I would go with you must not offset. As a plaintiff's lawyer, it would be wrong for me to say anything else. Okay. I guess so. But at least here you went under either, at least at the district court level because the district judge, magistrate judge exercised her discretion. Correct. Thank you, Your Honors. Thank you. Thank you, counsel. Now we'll hear from your adversary. Thank you, Your Honors. Just a few brief points for rebuttal. First, there is a position as state police trooper and the record is uncontroverted on this fact. We have the testimony of Ms. Meade. She established that the job is state police trooper. And then subsequently after spending several years on patrol, they may be assigned to some sort of specialized role, but at all times they remain state troopers and at all times are expected to be first responders if need be. In addition, Trooper Newton's own job description lists him as a trooper. And in his own email, he identified himself as master trooper. So it's disingenuous to say that there's no job of trooper. But it's unsurprising because if the paradigm is shifted to whether or not Newton can perform the limited duty job, this is a much different case. But if we're looking at the job for which he was hired, the job that he spent six months in the academy training for, a substantial investment on the part of the Commonwealth was put into his training to be a state police trooper. They're not trained on procurement and supply at the academy. So in this case, there certainly is a job of Pennsylvania state police trooper. And that is the benchmark for consideration, not whether or not he could perform the limited duty role. And the question of whether it would be unreasonable to maintain the limited duty role can be answered by looking at different persuasive caseload like Gara and Champ. Those cases are on all fours with this case and Champ. The officer was on limited duty for 15 years. And it was determined that they did not need or for budgetary reasons, they needed to get rid of that role and fill it with the first responder. It's on all fours with this case, the court and there and Champ said that the individual was not qualified. And it would be so in the first instance, trooper Newton could not perform the essential duties of the job. That's why there is no discrimination here. And certainly this is not like something like gender discrimination. The state police does not discriminate against people on the basis of their disability. What occurred here is that an individual can no longer do the job for which he was hired. And we went above and beyond and gave him a very reasonable accommodation that didn't have to give when he wasn't qualified by letting him remain for 17 years until he vested in full pension benefits and was taken care of for the rest of his life. Thank you, Your Honor. Thank you, counsel. We'll take the case under advisement. We thank counsel for their excellent briefing and oral argument today. And